UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| TONY L. PETERSON, | ) | |
| --- | --- | --- |
| Claimant, | ) | |
| v. | ) | Case No. CV607-075 |
| MICHAEL J. ASTRUE,<br>*Commissioner of Social Security,* | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

On November 1, 2007, Tony L. Peterson filed a complaint with this Court appealing the Social Security Commissioner's denial of his application for benefits under Titles II and XVI of the Social Security Act. (Doc. 1.) For the reasons set forth below, the case should be **REMANDED** for rehearing and further administrative review.

I. **BACKGROUND**

Claimant Peterson is a thirty-eight-year-old who dropped out of school prior to completing the ninth grade and is currently pursuing a GED. (Tr. 104, 356.) He worked as a laborer with Local 896 (April 1989 through March 1992), a painter with Local 1156 (March 1992 through September 1997), a construction worker (September 1997 through January 2001), and, finally, a carpenter and millwright with Local 256 (January 2001 through 2004). (Tr. 92, 100.) He currently receives benefits from the federal Temporary Assistance to Needy Families ("TANF") program, and spends some 40 hours per week assembling informational paper packets regarding TANF eligibility and benefits. (Tr. 356.) On July 15, 2004, claimant filed his application for disability insurance benefits, alleging that he became disabled on April 20, 2003, when a car accident began causing pain in his back. (Tr. 13, 111.) Claimant contends that his back pain has worsened progressively since the date of the accident and that prescription medications and other treatments have provided no relief. In addition, he claims to have developed depression and anxiety that have also worsened over time.

The Social Security Commissioner denied claimant's application, first on December 21, 2004, (Tr. 26), and again upon reconsideration on

April 14, 2005. (Tr. 13.) On April 25, 2005, claimant filed a timely written request for hearing. (Id.) A hearing was held before an Administrative Law Judge ("ALJ") on October 19, 2006, (Tr. 344), but on December 11, 2006, the ALJ issued a decision denying claimant's benefits application. (Tr. 10.) On August 31, 2007, following the appeals council's rejection of claimant's request for review, the ALJ's decision became the final decision of the Commissioner. (Tr. 3-5.) Claimant then filed a complaint in this Court, contending that the ALJ's decision is incorrect as a matter of law and is not supported by substantial evidence. (Doc. 1.)

## II. ANALYSIS

Affirmance of the ALJ's decision is mandatory if the ALJ's conclusions are supported by substantial evidence and based upon an application of correct legal standards. 42 U.S.C. § 405(g); Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002); Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is something more than a mere scintilla, but less than a preponderance." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks and

citations omitted). It "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004) (quotation marks and citations omitted). If substantial evidence supports the decision, the Court will affirm "[e]ven if the evidence preponderates against the Commissioner's findings." Id. at 1158-1159. The substitution of this Court's judgment for that of the Commissioner is not allowed. Barnes v. Sullivan, 932 F.2d 1356, 1357-1358 (11th Cir. 1991).

The burden of proving disability lies with the claimant. 20 C.F.R. § 404.1512; Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). To determine whether claimant has met his burden of proof, the Court looks to the five-step evaluation process set forth in the Social Security Regulations. 20 C.F.R. § 416.920; Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). At step one, the claimant must prove that he has not engaged in substantial gainful activity. Id. At step two, he must demonstrate a severe impairment or combination of impairments. Id. Then, at step three, if the claimant's impairment meets or equals a listed impairment, he is automatically found disabled. Id. If not, he must advance to step four, which requires him to prove an inability to perform

past relevant work. Id. If he cannot perform past relevant work, stage five shifts the burden to the Commissioner to show that "there is other work available in significant numbers in the national economy that the claimant is able to perform." Id.

After the hearing, the ALJ found that claimant satisfied step one of the five-step analysis because he had not engaged in substantial gainful activity at any time relevant to the decision. (Tr. 15.) At step two, the ALJ concluded that the medical evidence indicated that claimant suffered several severe impairments: degenerative and discogenic disorders of the lumbar spine and pain disorder. (Id.) At step three, however, the ALJ held that claimant did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1. (Id.) Accordingly, the ALJ considered whether claimant retained the residual functional capacity to perform his past relevant work. (Tr. 17.) The ALJ determined that claimant could not do so, but that claimant could perform unskilled sedentary exertional work and that such jobs are available in sufficient numbers in the national economy. (Tr. 16-18.) Accordingly, the ALJ found that claimant was not disabled under the

Act. (Tr. 18.) Claimant contends that the ALJ erred in finding him not disabled and able to perform unskilled sedentary work. (Doc. 11.) He presents three particular grounds for remand. The Court will address two of claimant's contentions: (A) that the medical evidence established that his impairments meet or equal an impairment under Listing 12.05C, the listing for the diagnostic category of mental retardation, and (B) that the ALJ erred by applying the Medical-Vocational Guidelines without having a vocational expert present to give testimony.[1] (Id. at 2.)

## A.  Whether Claimant Meets Listing 12.05

To qualify for Listing 12.05C, claimant must meet three requirements, which the Social Security Administration explained in a recent acquiescence ruling in the agency as:

> (1) mental retardation, i.e., significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period, or autism, i.e., a pervasive developmental disorder characterized by social and significant communication deficits originating in the developmental period; (2) a valid verbal, performance or full scale IQ in the range specified by Listing 12.05C; and (3)

---

[1] Claimant also avers that the ALJ's decision is not supported by substantial evidence, as the ALJ did not give sufficient weight to his complaints of pain and instead misinterpreted and relied too heavily on other insignificant factors, in particular claimant's daily activity level. (Doc. 11 at 12-14.) Because this Court finds reason on other grounds to remand this case for further proceedings, it declines to address this contention at this time. See Stinson v. Astrue, No. 806-cv-1575, 2008 WL 731303, at *4 (M.D. Fla. March 18, 2008).

a physical or other mental impairment that is severe within the meaning of 20 CFR 404.1520(c) or 416.920(c).

Soc. Sec. Acquiescence Rul. 03-1(7), 68 Fed. Reg. 74, 279, 74, 280 (Dec. 23, 2003). So long as substantial evidence supports the ALJ's determination that claimant did not meet Listing 12.05C, this Court will not disturb that conclusion.[2]

Here, claimant supports his contention only by pointing to the results of a psychological assessment rendered by Dr. Steve F. Chester, a state TANF benefits evaluator. (Doc. 11 at 11-12; Tr. 241-48.) In particular, claimant focuses on the low verbal and full scale scores (68 and 69, respectively) that he received on an IQ test administered by Dr. Chester. (Doc. 11 at 11-12.) Dr. Chester concluded, however, that

---

[2] The Court notes that Peterson did not raise the claim that he meets the criteria for mental retardation within his initial application for SSI benefits, nor did he testify at his hearing that he suffered from any intellectual or mental impairments that would prevent him from working. The Eleventh Circuit has recognized that "this failure alone could dispose of his claim," since typically an "'administrative law judge is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.'" Street v. Barnhart, 133 F. App'x 621, 627 (11th Cir. 2005) (citing Pena v. Chater, 76 F.3d 906, 909 (8th Cir. 1996)). That is, claimants bear the responsibility of presenting evidence to the ALJ to put him on notice of any alleged limitations. 133 F. App'x at 627. Moreover, as the Eleventh Circuit noted in Street, "this was not a case where claimant was unrepresented, subjecting the ALJ to a heightened duty to probe into all of the relevant facts surrounding [claimant's] disability claim." Id. Nonetheless, as the Commissioner chose to address the merits of claimant's allegation of mental retardation, the Court likewise will examine and dispose of the claim on those grounds.

although claimant's test scores reflect that he is functioning within the "mildly mentally retarded to borderline range of intelligence," the scores are likely an inaccurate estimate of his true intelligence level, due to claimant's difficulties with concentration. . . . [as claimant] appeared to be in pain during the testing session." (Tr. 245.) Dr. Chester theorized that claimant "could have consistently scored within the upper borderline to low average range of intelligence, had he been better able to concentrate." (Id.)

Although claimant's verbal and full scale IQ test scores fall within the 60 to 70 range (though barely), meeting listing 12.05C's second requirement, the ALJ did not err in finding that claimant did not meet the listing, as claimant failed to show that he met at least one of the other two requirements. That is, he did not show "deficits in adaptive behavior initially manifested during the developmental period." 20 C.F.R. Part 404, Subpart P, App'x 1, § 12.05C.

Claimant's brief to this Court lacks any argument or evidence regarding the "deficit in adaptive behavior" requirement, likely due to the fact that claimant's medical records are devoid of any evidence of such a condition. No mental health professional has diagnosed (nor even

speculated on the possibility of diagnosing) claimant as mentally retarded. Although Dr. Chester found that claimant suffered "general cognitive limitations," nothing in the record reflects a deficit in his adaptive behavior and Chester attributed much of claimant's limitations to his pain disorder. (Tr. 245, 247.) He noted no problems with claimant's judgment or decision-making, or with his "ability to deal with frequent change/flexibility." (Tr. 247.) Moreover, in the first page of his psychological assessment, Dr. Carter, a state-appointed evaluator, checked the boxes indicating a finding of "12.04 Affective Disorders" and "12.06 Anxiety-Related Disorders;" however, he placed no mark in the box indicating a finding of "12.05 Mental Retardation." (Tr. 217.) A second psychological consultant reviewed and signed off on this determination. (Id.) As a result, the ALJ could reasonably infer that the two consultants each considered and rejected the possibility that claimant met the requirements for any part of Listing 12.05. Finally, there is no evidence that claimant "initially manifested" any such deficits "during the developmental period." Nothing in claimant's medical records references such problems during claimant's youth. In fact, most of his problems began after the accident, when he was thirty-two years

old. Before the accident, claimant worked in a profession requiring a certain level of skill, enjoyed cooking, was able to drive an automobile, enjoyed fishing, and helped care for his two children. (Tr. 70, 100.) In conclusion, the ALJ's assessment that claimant did not meet all three requirements for Listing 12.05C was based on substantial evidence.

## B.    Whether the ALJ Improperly Applied the Grids

Even though the Court finds substantial evidence to support the ALJ's determination that claimant is not disabled under Listing 12.05C, this case should still be remanded for a new hearing so that the ALJ can call a vocational expert to testify to the effects of claimant's nonexertional limitations. Claimant contends that the ALJ erred when he relied upon the medical-vocational guidelines (the "grids") to determine whether work existed in the national economy that the claimant could perform, instead of employing a vocational expert for such a determination. In the Eleventh Circuit, "[e]xclusive reliance on the grids is not appropriate either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has nonexertional impairments that significantly limit basic work skills." Francis v. Heckler, 749 F.2d 1562, 1566 (11th Cir. 1985).

Here, claimant alleged three impairments that are considered nonexertional limitations: pain, anxiety, and depression. See Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995) (holding that pain is a nonexertional impairment for disability and social security purposes);[3] Hunt v. Heckler, 748 F.2d 478, 481 (8th Cir. 1984) (holding that anxiety and depression are nonexertional impairments). Although the ALJ found that claimant's pain disorder constituted a severe impairment, he found that claimant's "history of anxiety [and] depression" appeared to have "responded well to treatment" and thus were not severe impairments. (Tr. 15-16.)

"When there have been nonexertional factors . . . alleged, the preferred method of demonstrating that the claimant can perform

---

[3] In Foote the Eleventh Circuit held that:

> Exclusive reliance on the grids is appropriate in cases involving only exertional impairments (impairments which place limits on an individual's ability to meet job strength requirements). Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983). Pain is a nonexertional impairment . . . . If the grids are inapplicable, the Secretary must seek expert vocational testimony . . . . "The burden of showing by substantial evidence that a person who can no longer perform his former job can engage in other substantial gainful activity is in almost all cases satisfied only through the use of vocational expert testimony." Chester v. Bowen, 792 F.2d 129, 132 (11th Cir. 1986).

67 F.3d at 1559.

specific jobs is through the testimony of a vocational expert." MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986) (citing Cowart v. Schweiker, 662 F.2d 731, 736 (11th Cir. 1981)). "Exclusive reliance on the grids is not appropriate either when claimant is unable to perform a full range of work at a given residual functional level or when a claimant has nonexertional impairments that significantly limit basic work skills." Francis, 749 F.2d at 1566; see also Walker v. Bowen, 826 F.2d 996, 1002-03 (11th Cir. 1987). Thus, "[i]t is only when the claimant can clearly do *unlimited* types of light work, . . . that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy." Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989) (emphasis in original). Here, claimant alleged three nonexertional limitations, and the ALJ found that claimant suffered at least one of them—pain disorder. (Tr. 15.) He conceded, in a roundabout way, that this prevents claimant from performing a full range of sedentary work, stating that the "additional limitations have *little* or no effect on the occupational base of unskilled sedentary work." (Tr. 18) (emphasis added). As the ALJ was unable to declare conclusively that claimant could perform the full range of work in the sedentary

category, he was required to call a vocational expert to determine which, if any, jobs in the national economy claimant could perform. Moreover, he simply declared broadly that "there are jobs that exist in significant numbers in the national economy that the claimant can perform," without even attempting to explicate which particular jobs he could perform. (Id.) Such a conclusory determination is inadequate where there was no finding that claimant could do unlimited types of sedentary work.

Because the ALJ failed to employ the testimony of a vocational expert in light of claimant's allegations of pain, anxiety, and depression, this case should be remanded.[4]

## III. CONCLUSION

---

[4] The Court notes an additional area of consideration which requires expert vocational testimony, but which the claimant did not raise in his brief. As the ALJ did not appear to reject Dr. Chester's IQ assessment of claimant, the ALJ should have employed the testimony of a vocational expert in order to determine whether claimant's borderline intellectual functioning affected his residual functional capacity. See Allen, 880 F.2d at 1202 ("Absent testimony from a vocational expert, the ALJ's conclusion that appellant's mental limitations do not significantly compromise her basic work skills . . . is not supported by substantial evidence."); see also Holz v. Apfel, 191 F.3d 945, 947 (8th Cir. 1999) (finding that claimant's "borderline intellectual functioning . . . was a significant nonexertional impairment that needed to be considered by the [vocational expert]").

The ALJ erred by failing to call a vocational expert to testify to the potential work limitations caused by the claimant's alleged anxiety, depression, pain disorder, and degenerative and discogenic disorders of the lumbar spine, as well as the effects of claimant's borderline intellectual functioning. This case should therefore be **REMANDED** for an additional hearing and decision. At the hearing the ALJ shall present the vocational expert with a hypothetical that mirrors the claimant's situation, including the effect that his back pain, anxiety, depression, and possible borderline intellectual functioning could have on claimant's ability "to perform unskilled sedentary work." (Tr. 18.) The ALJ should also elicit from the expert particular types of jobs that claimant should be able to perform.

**SO REPORTED AND RECOMMENDED** this  1st  day of December, 2008.

/s/ G.R. SMITH
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**